25CA1212 Casas v Park Forest Water 07-23-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA1212
El Paso County District Court No. 23CV32033
Honorable Gregory R. Werner, Judge

Casas Limited Partnership #4, a Colorado Limited Partnership, and IQ Investors, LLC,

Plaintiffs-Appellants,

v.

Park Forest Water District,

Defendant-Appellee.

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE KUHN
Johnson and Martinez*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 23, 2026

The Law Office of Stephen A. Hess, P.C., Stephen A. Hess, Colorado Springs, Colorado, for Plaintiffs-Appellants

MacDougall & Woldridge, P.C., Julianne M. Woldridge, Woodland Park, Colorado, for Defendant-Appellee

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1    Can property owners who fail to fulfill a condition precedent in an inclusion agreement with a special water district require the special district to still provide water under the agreement?  We conclude that they cannot, and consequently, we affirm.

## I.    Background

¶ 2    Plaintiffs, Casas Limited Partnership #4, a Colorado limited partnership, and IQ Investors, LLC (the owners), purchased seventy acres of real property in El Paso County.  The property contained an existing, occupied house, referred to here as the Kurie Road House.  In 2013, the owners began building a new house on the property, which they called the Eagle Wing House.  That same year, the owners also applied to the El Paso County planning authorities for approval to subdivide the property into lots.

¶ 3    In 2014, the owners entered into an inclusion agreement with defendant, Park Forest Water District (the special district), a special water district.  *See* §§ 32-1-101 to -113, C.R.S. 2025.  In the inclusion agreement, the special district agreed to facilitate legally incorporating the owners' property into its service area.  As long as the owners complied with specified terms, the special district agreed that it would provide the property with domestic water.  However, a

1

precondition to the special district providing water under the inclusion agreement was that the owners needed to complete the pending subdivision process for the property.

¶ 4     Over the ensuing years, the owners made several requests for water from the special district for the Eagle Wing House.  The special district denied each of these requests.  Most recently, in 2021, the owners requested that the special district approve a tap line that would provide domestic water to the Eagle Wing House. The special district responded that the owners still hadn't completed the subdivision process as required by the inclusion agreement.  Consequently, the special district again refused to provide water.

¶ 5     The owners responded with a lawsuit, bringing a single claim for breach of contract that sought damages.  The special district moved to dismiss the complaint under C.R.C.P. 12(b)(1).  And the trial court granted the motion, reasoning that the owners had failed to timely comply with the notice requirement of the Colorado

Governmental Immunity Act (CGIA).[1] *See* §§ 24-10-101 to -120, C.R.S. 2025. However, the court also permitted the owners to amend their complaint to seek specific performance or injunctive relief, which the court indicated would make the CGIA inapplicable.[2]

¶ 6      In response, the owners filed an amended complaint and brought three new claims: specific performance for breach of contract, declaratory judgment, and permanent injunction.[3] Following a bench trial, the court found that the inclusion

---

[1] The owners moved the trial court to reconsider the C.R.C.P. 12(b)(1) dismissal, and they requested a *Trinity* hearing to decide the disputed fact of whether the owners had timely complied with the CGIA's notice deadline. *See Trinity Broad. of Denv., Inc. v. City of Westminster*, 848 P.2d 916, 924-25 (Colo. 1993). The court held a *Trinity* hearing, denied the motion for reconsideration, and upheld the dismissal.

[2] While the CGIA may not bar certain claims that seek declaratory or injunctive relief, we aren't aware of case law holding that the CGIA never applies to such claims. *See Upper Platte & Beaver Canal Co. v. Riverview Commons Gen. Improvement Dist.*, 250 P.3d 711, 714 (Colo. App. 2010) ("[E]quitable and declaratory claims may be, but are not necessarily, barred by the CGIA."). Still, neither party disputes this ruling.

[3] We note that "an injunction, even if pleaded as a claim for relief, is a remedy, not an independent cause of action." *Coomer v. Donald J. Trump for President, Inc.*, 2024 COA 35, ¶ 217.

agreement established the rights between the parties regarding how the water would be provided to the property. The court further found that the completion of the subdivision process was a condition precedent to the special district's duty to provide water under the agreement. The court therefore denied the owners' claims on their merits because the owners failed to complete the subdivision process as required by the inclusion agreement. Additionally, the court awarded attorney fees to the special district.

## II.    Analysis

¶ 7    On appeal, the owners contend that the trial court erred by denying the three claims asserted in their amended complaint and by granting the special district's motion to dismiss. We address each issue in turn.

### A.    Denial of Claims

¶ 8    The owners first contend that the trial court erred by denying their claims — namely, that the owners' failure to complete the subdivision process meant the special district wasn't required to provide water to the Eagle Wing House. To address this contention, we must first examine the text of the inclusion agreement. We then

4

review whether the court erred in its findings regarding the special district's obligation to provide water to the property.

### 1. Standard of Review

¶ 9 A judgment after a bench trial presents a mixed question of law and fact. *Frisco Lot 3 LLC v. Giberson Ltd. P'ship, LLLP*, 2024 COA 125, ¶ 66. "We review the trial court's legal conclusions, including its application of the governing legal standards, de novo, and we will not disturb its factual findings unless they are clearly erroneous and not supported by the record."[4] *Id.* "A court's factual finding is clearly erroneous [only] when it has no record support." *Cronk v. Bowers*, 2023 COA 68M, ¶ 12 (citation omitted). "The credibility of witnesses, sufficiency, probative effect, and weight of the evidence, as well as any inferences or conclusions to be drawn therefrom, are all within the province of the trial court." *Gold Hill*

---

[4] We note that decisions on injunctive relief and whether to enter a declaratory judgment are reviewed for an abuse of discretion. *Markwell v. Cooke*, 2021 CO 17, ¶ 21; *Trinidad Area Health Ass'n v. Trinidad Ambulance Dist.*, 2024 COA 113, ¶ 35. However, we don't need to address whether the trial court abused its discretion because the court denied the claims without reaching the requested relief, and the owners' challenges on appeal target only the court's findings on the underlying merits.

*Dev. Co., L.P. v. TSG Ski & Golf, LLC*, 2015 COA 177, ¶ 7 (citation omitted).

¶ 10     Agreements to include property from outside a special district as part of the district are contractual in nature. *See Schlarb v. N. Suburban Sanitation Dist.*, 357 P.2d 647, 648 (Colo. 1960); *see also* § 32-1-402(1)(c), C.R.S. 2025 ("Nothing in this section shall prevent an agreement between a board and the owners of property sought to be included in a special district with respect to the fees, charges, terms, and conditions on which such property may be included."). We review contracts de novo. *French v. Centura Health Corp.*, 2022 CO 20, ¶ 24.  The primary goal of contract interpretation is to determine and give effect to the parties' intent. *Id.* at ¶ 25.  This intent is primarily ascertained from the language of the contract itself. *Id.*  "When a written contract is complete and free from ambiguity, we will deem it to express the parties' intent and enforce it according to its terms." *Id.*  "A condition precedent is '[a]n act or event, other than a lapse of time, that must exist or occur before a duty to perform something promised arises.'" *Soicher v. State Farm Mut. Auto. Ins. Co.*, 2015 COA 46, ¶ 22 (alteration in original) (quoting Black's Law Dictionary 355 (10th ed. 2014)).

## 2. Interpretation of the Inclusion Agreement

¶ 11      Reviewing the inclusion agreement de novo, the agreement "set[s] forth the terms and provisions under which the [p]roperty is to be included within [the special district]." The inclusion agreement applies to the property as a whole and does not contain specifications for particular houses.

¶ 12      As it relates to the proposed subdivision, provisions in the inclusion agreement state that completion of the subdivision process by the owners — along with court approval of the inclusion — is a precondition to the *entire* agreement. The following provisions define completion of the subdivision as a condition precedent to the special district's obligations to provide water:

- "The [p]arties agree and acknowledge that this [a]greement is premised upon (a) completion of the pending subdivision process by [the owners] . . . ; and (b) approval by the [d]istrict [c]ourt of [a] [p]etition for [i]nclusion."

- "[The special district] acknowledges that [the owners] [are] currently processing a request for subdivision of the property through El Paso County planning authorities,

7

and that the terms and conditions of this [i]nclusion [a]greement are premised upon successful completion of that subdivision process."

- "Contingencies. This [i]nclusion [a]greement is conditional upon obtaining the formal inclusion of the [p]roperty into [the special district] by order of the El Paso County District Court, and upon completion of the pending subdivision of the property by El Paso County planning authorities."

¶ 13     The agreement further states that the owners "will abide by all terms of this [i]nclusion [a]greement" and that the special district "shall not provide any water service if [the owners] . . . are not in compliance with this [a]greement."

¶ 14     We conclude that the inclusion agreement's plain language is unambiguous. According to its clear terms, the entire agreement is "premised" and "conditional" on the owners completing the subdivision process, which is a condition precedent to the special district's obligation to perform. *See id.* at ¶ 22. Under the agreement, then, so long as the owners haven't completed the subdivision, the special district doesn't have to "provide any water

8

service" to the property, which necessarily includes the Eagle Wing House.

### 3. The Owners Failed to Fulfill the Condition Precedent of Completing the Subdivision Process

¶ 15 The owners claim that the trial court erred by finding that they hadn't satisfied the subdivision condition precedent for the following three reasons: (1) the parties expected, despite the inclusion agreement, for the special district to provide water to the Eagle Wing House, as demonstrated by the water it had already provided to the Kurie Road House; (2) the special district's conduct showed that the owners had satisfied the conditions of the inclusion agreement; and (3) the special district's conduct proved it waived the subdivision process as a condition precedent to its performance under the inclusion agreement.

### a. Additional Facts

¶ 16 According to the evidence and testimony presented at trial, prior to 2013, the owners had two dedicated wells on the property that provided domestic water, including for the Kurie Road House. When the parties entered into the inclusion agreement in 2014, the Kurie Road House was occupied and the Eagle Wing House was

under construction. After the parties entered into the inclusion agreement, the special district obtained an order from the district court that granted the inclusion of the property within the special district.

¶ 17    Except for the completion of the subdivision process, the owners argue that they generally complied with the provisions of the inclusion agreement, including by transferring to the special district their water and well rights, water-related infrastructure, and easements. The owners also paid monthly water charges, taxes, and mill levies.

¶ 18    The agreement further allowed the owners to pay a tap fee for each new water line the owners wanted for the property, so long as the special district's board of directors approved the line. And the special district provided a tap certificate for the Kurie Road House, which meant that the house received domestic water from the special district.

¶ 19    In 2021, the owners submitted a check to the special district to pay a fee for a new tap line to the Eagle Wing House. The special district's board of directors declined to approve the tap line because (1) a fire service line was interconnected with the domestic service

line in violation of the special district's rules and regulations, and (2) the owners hadn't completed the subdivision process. The special district refunded the owners' money for the new tap line.

¶ 20 The owners then requested that the special district waive the fire service line requirement. The special district's board of directors granted the waiver, but it also stated that the subdivision process remained a precondition to receiving water at the Eagle Wing House under the inclusion agreement.

¶ 21 In an oral ruling, the court found that the water supplied to the Kurie Road House had no relevance to whether the special district needed to provide water to the Eagle Wing House. The court further found that the special district never waived the requirement for the owners to complete the subdivision process.[5] And the court found that the owners were responsible for ensuring the completion of the subdivision process, which they failed to do. Accordingly, the court denied the owners' request for a permanent injunction and

---

[5] After the owners initially amended their complaint, the special district moved for summary judgment. The court denied the motion because it found that whether the special district had waived the condition precedent remained a disputed material fact. Then, at trial, the court focused the parties on addressing only the issue of waiver. On appeal, neither party contests these rulings.

issued a final judgment denying the relief sought in the amended complaint.[6]

### b. The Record Supports the Trial Court's Findings

¶ 22    First, the owners claim that the court erred by finding the Kurie Road House's water supply irrelevant to whether the special district had to provide water to the Eagle Wing House. This is because, the owners contend, under the inclusion agreement the parties understood that the special district would provide water to

---

[6] The trial court made its final ruling according to the factors for preliminary injunctions. *See Rathke v. MacFarlane*, 648 P.2d 648, 653-54 (Colo. 1982). However, "the legal criteria and analytical process" for a *preliminary* injunction are "essentially the same" as for a *permanent* injunction except that, for the latter, the court considers actual success on the merits. *Dallman v. Ritter*, 225 P.3d 610, 621 (Colo. 2010). Here, the court concluded that the owners had to complete the subdivision condition precedent before the special district had to supply water and that the special district had not waived that requirement. Accordingly, the trial court concluded that the special district was not yet obligated to provide water. While the oral ruling could perhaps have been more explicit, we have little trouble discerning the trial court's declaration of the parties' rights on the key points or its conclusion that the special district did not breach the contract. Indeed, the special district's success on the merits of the subdivision condition precedent issue — and the court's related conclusion that the special district hadn't breached the contract — was the basis for the court's denial of a permanent injunction. But having concluded that there was no waiver of the condition precedent, and thus no breach, we perceive no error in the trial court not explicitly denying the remedy when it dismissed the underlying substantive claim.

the Eagle Wing House based on the special district providing water to the Kurie Road House, which was similarly situated on the property as the Eagle Wing House.

¶ 23    But the inclusion agreement, by its own terms, applies to the entire property. It doesn't address water for the Kurie Road House specifically or contain any exception for that structure. Instead, the agreement's provisions lay out the requirements for the owners to connect water lines to *improvements* on the property and request *new* water lines for houses that might be developed in the future. Nothing in the agreement suggests that the special district continuing the water flow to a pre-existing, occupied house satisfied any of the provisions or preconditions of the agreement.

¶ 24    Moreover, testimony elicited at trial further established that the water provided to the Kurie Road House by the special district didn't contradict these terms. When the parties entered the inclusion agreement, the Kurie Road House was occupied and received water from the property's wells, while the Eagle Wing House was under construction, unoccupied, and without water. The evidence also showed that this distinction between the houses meant the Kurie Road House would continue to receive water

because it was an occupied homestead that would otherwise be without water. However, that didn't alter the requirement that providing water through a new tap line to the Eagle Wing House depended on the owners' compliance with the inclusion agreement. Thus, the inclusion agreement and evidence presented at trial support the trial court's finding that the Kurie Road House's water supply was irrelevant to whether the special district had to supply water to the Eagle Wing House. *See Cronk*, ¶ 12. Given the differences between the two properties — and the record evidence supporting the trial court's findings — we don't perceive any error in its conclusion on this point.

¶ 25    Second, the owners argue that the special district's conduct proved that it construed the owners as having already satisfied the entire inclusion agreement. In support, the owners claim that we must look to the parties' practical construction of the inclusion agreement in order to interpret their intentions regarding the agreement's ambiguous terms.

¶ 26    Yet, the owners don't point to, and we don't discern, any ambiguity to the inclusion agreement. As we conclude above, its express terms state that it is "premised" and "conditional" on

"completion of the pending subdivision of the property." Therefore, the owners' argument fails because we must enforce the agreement according to its unambiguous terms. Given the lack of ambiguity, we agree with the trial court that the special district's practical conduct had no bearing on interpreting the parties' intentions as expressed in the agreement. *See French*, ¶ 25.

¶ 27 Third, the owners claim that the special district's conduct also demonstrated that the special district intentionally waived the subdivision condition precedent. The owners assert that the special district had benefited from the owners honoring many of the provisions in the inclusion agreement. That is, the owners had complied with the following provisions:

- transferring all water rights on the property to the special district;

- submitting construction plans for approval;

- transferring constructed infrastructure to the special district;

- adding two wells to the property;

- remitting fees for a requested tap line;

- granting the district special easements; and

15

- paying mil levy taxes.

Because the special district accepted these benefits, the owners allege that the special district waived the right to contest the agreement over the subdivision condition.

¶ 28   "Waiver is the intentional relinquishment of a known right." *Avicanna Inc. v. Mewhinney*, 2019 COA 129, ¶ 25.  Waiver of a contractual right occurs "if the party acts inconsistently with the right and prejudice accrues to the other parties to the contract."  *Id.* "Waiver may be express, or it may be implied when a party's actions manifest an intent to relinquish a right or privilege."  *Venard v. Dep't of Corr.*, 72 P.3d 446, 450 (Colo. App. 2003).  For implied waiver by conduct, "the conduct itself should be free from ambiguity and clearly manifest the intention not to assert the benefit." *Avicanna*, ¶ 25 (quoting *Dep't of Health v. Donahue*, 690 P.2d 243, 247 (Colo. 1984)).  Waiver is usually a question of fact for the trial court.  *Id.* at ¶ 24.

¶ 29   Here, the terms of the agreement anticipated the parties performing certain provisions at its outset.  This included the special district obtaining court approval of the inclusion order and the owners helping facilitate that approval.  Furthermore, as the

16

agreement states, "[u]pon inclusion of the [p]roperty by [the special district] by final order of the El Paso County District Court, [the owners] shall abide by all terms of this [i]nclusion [a]greement," which entailed the owners' immediate obligation to transfer water rights and infrastructure, seek approval for improvements, and pay relevant fees or taxes.

¶ 30    But the obligations imposed on the owners subsequent to the inclusion order didn't negate the subdivision condition precedent. The agreement acknowledges that the owners were "*currently* processing" the subdivision approval request.  (Emphasis added.) And although the owners had to follow the provisions of the inclusion agreement, its terms state that the agreement itself remained "premised upon successful completion of that subdivision process" in the future.  As discussed above, until the owners completed the "pending" subdivision process, the special district didn't have to "provide any water service" because the owners were "not in compliance with th[e] [inclusion agreement]."  In other words, the simple fact that the owners complied with their immediate obligations didn't relieve them from having to complete

17

the subdivision process as a necessary precondition to the special district's obligation to perform under the agreement.

¶ 31    The trial court found that the owners failed to fulfill their responsibility of ensuring the completion of the subdivision process. The record supports this finding. And the record further supports the trial court's finding that the special district never implicitly waived the subdivision precondition. This is because the special district presented evidence at trial that, from roughly 2015 through 2021, it had *consistently* refused to provide water to the Eagle Wing House based on the owners' failure to complete the subdivision process. *See Avicanna*, ¶ 25. And the special district clearly manifested its intent in 2021 by explicitly insisting that the owners satisfy the subdivision precondition, even though it was willing to waive the regulations for the fire service line.

¶ 32    As the special district clearly manifested an intent to *not* waive the subdivision condition precedent — fully inapposite to the owners' claim — the trial court's waiver findings weren't clearly erroneous. *See id.*; *Cronk*, ¶ 12.

## B. Dismissal of Damages Claim

¶ 33    The owners also contend that the court erred by granting the motion to dismiss its original complaint because the owners' claim for damages for breach of contract couldn't lie in tort — meaning the CGIA didn't apply.  The owners further argue that even if the CGIA *did* apply, the owners provided notice of their claim to the special district within the CGIA's deadline based on when the claim became cognizable.  But we don't reach the merits of these questions regarding the CGIA because any error was necessarily harmless under these circumstances.  *See* C.A.R. 35(c).

¶ 34    The owners' initial complaint claimed damages for breach of contract.  In support, the owners alleged that they had performed their obligations under the inclusion agreement and that the special district had breached the inclusion agreement by refusing to provide water to the Eagle Wing House.  After the court dismissed the claim under the CGIA, the owners amended the complaint by dropping the breach of contract claim for damages and replacing it with the breach of contract claim seeking specific performance.  Yet both claims asserted the same breach of contract, relying on the same allegations for the underlying breach of contract elements.

Indeed, the only difference between the two claims was the relief they sought: damages or specific performance. *See Air Sols., Inc. v. Spivey*, 2023 COA 14, ¶ 48 ("Specific performance is a remedy developed by courts of equity to provide relief when the legal remedies of damages and restitution are inadequate." (citation omitted)).

¶ 35     As explained above, after reviewing the contract and the record, we affirm the trial court's conclusions that the owners failed to perform a condition precedent to the special district's obligation to provide water and that the special district had not waived that condition. Accordingly, the owners fail on the substance of their breach of contract claim. And given that the difference between the two complaints is the *remedy* they seek, they cannot prevail under these circumstances. Any error in the trial court's dismissal of the original complaint under the CGIA doesn't prejudice the owners because they are not entitled to *any* remedy for their failed breach

of contract claim.[7]  *See* C.A.R. 35(c); *see also* C.R.C.P. 61 ("The court at every stage of the proceeding *must* disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." (emphasis added)).

## III.  Appellate Attorney Fees

¶ 36    The special district requests appellate attorney fees and costs under the inclusion agreement.  The parties don't dispute that the inclusion agreement contains a fee-shifting provision that entitles the prevailing party to recover all costs and reasonable attorney fees incurred in litigation.

¶ 37    As a result, the special district is entitled as the prevailing party to an award of the reasonable attorney fees and costs that it incurred in this appeal.  *See People ex rel. Rein v. Jacobs*, 2020 CO

---

[7] Additionally, after the trial court dismissed the damages claim, the owners chose not to immediately appeal that ruling, *see Smith v. City & County of Denver*, 2025 COA 70, ¶ 29, instead accepting leave to amend their complaint.  But "[t]he filing of an amended complaint ordinarily supersedes the original complaint." *Pollock v. Highlands Ranch Cmty. Ass'n*, 140 P.3d 351, 353 (Colo. App. 2006). "As a consequence, where a plaintiff does not immediately appeal the dismissal of an original complaint and instead files an amended complaint, any error in dismissing the original complaint is waived." *Id.*  Hence, even if we didn't conclude that any error in the dismissal was harmless, the owners would have to clear these bars to proceed in any case.  *See id.*

50, ¶ 72.  We exercise our discretion to remand this matter to the trial court to determine the amount of the award.  *See* C.A.R. 39.1.

## IV.    Disposition

¶ 38     The judgment is affirmed, and the case is remanded to the trial court to determine the amount of the award for reasonable appellate attorney fees and costs as directed in this opinion.

JUDGE JOHNSON and JUSTICE MARTINEZ concur.